IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| EQUITABLE FINANCIAL LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) C.A. No.:<br>)<br>) |
| OPTIMUS HOSPITALISTS & PEDIATRIC SUBSPECIALISTS, LTD. | )<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

## COMPLAINT

Plaintiff Equitable Financial Life Insurance Company, formerly known as AXA Equitable Life Insurance Company ("Equitable"), by and through its undersigned counsel, hereby files this Complaint against Defendant Optimus Hospitalists & Pediatric Subspecialists, Ltd. ("Optimus") and states as follows:

## PARTIES

1. Equitable is a corporation existing under the laws of the state of New York, with its principal place of business in New York. Equitable is a citizen of the state of New York pursuant to 28 U.S.C. § 1332(c)(1).

2. Optimus is a corporation existing under the laws of the state of Illinois, with its principal place of business at 900 Jorie Blvd., Ste 186, Oak Brook, IL 60523. Optimus is a citizen of the state of Illinois pursuant to 28 U.S.C. § 1332(c)(1).

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Equitable and Optimus, and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2) because at least one Defendant resides in this judicial district, and because this is the district in which a substantial part of the events giving rise to the claim occurred.

**FACTUAL ALLEGATIONS**

5. Between November 1, 2010 and April 2013, Equitable issued 16 corporate owned flexible premium variable life insurance policies (collectively, the "Policies" or individually, a "Policy") to Optimus as owner of the Policies. A true and accurate copy of the policy issued to Optimus is attached hereto as Exhibit A and incorporated herein by reference.

6. At all times, Optimus was the sole owner and beneficiary under the Policies insuring the below persons:

    a. Antonio Fiumara – Policy No. xxxxx0305
    b. Cholemri Sridhar – Policy No. xxxxx0306
    c. Edgar Dizon – Policy No. xxxxx0307
    d. Udochukwu Asonye – Policy No. xxxxx0131
    e. Leonardo Malalis – Policy No. xxxxx0144
    f. Marcia Dawson – Policy No. xxxxx0146
    g. Arvind Shukla – Policy No. xxxxx0147
    h. Jon Pascua – Policy No. xxxxx0150
    i. Gerardo Reyes – Policy No. xxxxx0155
    j. Ravi George – Policy No. xxxxx0157
    k. Suman Narumanchi – Policy No. xxxxx0168
    l. Luisa Orrico – Policy No. xxxxx0170
    m. Susan Faber – Policy No. xxxxx0171
    n. Camille Dicostanzo – Policy No. xxxxx0175
    o. Edna Asonye – Policy No. xxxxx0177
    p. Dorothy Garrett – Policy No. xxxxx0178

The above persons are collectively referred to as the "Insureds."

7. Optimus made all premium payments for the Policies.

8. Pursuant to the terms of the Policies, Optimus could "take a loan [on a Policy] while it has a loan value," with "interest on [the] loan accru[ing] daily at an adjustable loan interest rate." *See, e.g.*, Exhibit A at 12.

9. The Policies also provide that Optimus could surrender any or all Policies "at any time while the insured person is living." *See, e.g.*, Exhibit A at 11.

10. Upon surrender, Optimus would be entitled to a distribution of the Policies' account values *minus* "any outstanding policy loan and accrued loan interest" (hereinafter, the "Net Cash Surrender Value"). *See, e.g.*, *id.*

11. In addition to the plain language of the Policies, the effect of taking out policy loans was also explicitly stated in the prospectus:

> If not repaid, the aggregate amount of the outstanding loan and any accrued loan interest will reduce your cash surrender value and your life insurance benefit that might otherwise be payable. We will deduct any outstanding policy loan and accrued loan interest from your policy's proceeds if you do not pay it back.

12. Between 2019 and 2022, Optimus took out policy loans (the "Policy Loans") from the account values of the Policies pursuant to the terms of the Policies.

13. In each instance that Optimus took out a Policy Loan, Equitable sent confirmation letters to Optimus.

14. For each policy year, Equitable provided Optimus with an annual statement that reflected, among other information, the Policies' account values, any outstanding Policy Loans, and the Net Cash Surrender Value of the Policies.

15. Optimus was on notice and had direct knowledge regarding the fact that there were Policy Loans and accrued interest, as well as the amounts of the loans and interest.

16. The last issued annual statements for each Policy, which reflect a summary of Policy and loan activity through March 31, 2022 and October 31, 2022, show that each Policy had a loan balance, with a cumulative total of $751,480.75.

17. On or about January 6, 2023, Optimus requested surrender of the Policies for the Net Cash Surrender Value pursuant to the Policies' terms.

18. As of January 6, 2023, the Policies' account value totaled $1,569,217.99, and the Policy Loan balance and accrued loan interest for the Policies totaled $754,091.62.

19. On or about January 9, 2023, an erroneous check was issued to Optimus in the amount of $1,569,217.99; this amount represents the total full account value of the Policies, without reduction of the Policy Loans value and accrued interest due (hereinafter, the "Erroneous Distribution").

20. The Erroneous Distribution was a mistake due to a computer system error in calculating the Net Cash Surrender Value as the system did not subtract the Policy Loans and accrued loan interest from the Policies' account values, resulting in an overpayment of $754,091.62 (the "Overpayment") received by Optimus.

21. Pursuant to the Policies' terms, when the Policy Loans and accrued loan interest are properly subtracted from the Policies' account value, the correct Net Cash Surrender Value is $815,126.37; this amount should have been reflected on the check issued to Optimus on January 9, 2023.

22. But for the system failure, Equitable would not have issued the erroneous distribution resulting in an Overpayment.

**OPTIMUS'S BREACH**

23. Per Equitable's records, Optimus cashed the $1,569,217.99 check on or about January 18, 2023 at the Republic Bank of Chicago.

24. Equitable promptly discovered the Erroneous Distribution and Overpayment and made several demands for repayment of the Overpayment issued by mistake.

25. On or about March 15, 2023, Equitable contacted Optimus, informing it of the mistake and providing instructions for refund of the Overpayment.

26. On or about March 23, 2023, Equitable followed up with a letter to Optimus, reiterating that the Overpayment was a clerical mistake and stating that the Overpayment was owed to Equitable.

27. On or about March 29, 2023, Optimus confirmed that they had received the March 23, 2023, letter and that they would respond to Equitable.

28. On or about April 11, 2023, Equitable followed up with a letter informing Optimus that the funds had still not been received and that it was important for Equitable to receive them by April 26, 2023.

29. On or about April 21, 2023, Optimus replied and acknowledged receipt of the second demand letter while claiming, without any basis, that they would not return the money because they "do not believe that any Refund is due to Equitable Financial life Insurance Company."

30. On or about June 2, 2023, Equitable sent another demand letter, again requesting repayment of the Overpayment in full by June 16, 2023, or otherwise requesting that Optimus enter into a payment plan.

31. On or about June 14, 2023, Optimus replied to the June 2, 2023 demand letter, refusing to repay the Overpayment without any regard or reference to the Policy Loans. Optimus willfully disregarded Equitable's rights under the Policies.

32. To date, Optimus continues to refuse repayment of the $754,091.62 overpayment. Optimus's refusal is in bad faith.

## COUNT I – BREACH OF CONTRACT

33. Equitable repeats and realleges each and every allegation in the above paragraphs as if fully restated herein.

34. Between November 1, 2010 and April 2013, Equitable issued 16 corporate owned Policies to Optimus that were valid and enforceable contracts. *See* Ex. A.

35. Pursuant to the terms of the Policies, Optimus had the ability to take a loan out on any of the Policies. Such loan would include interest accruing daily at an adjustable loan interest rate.

36. The Policies further provide that if Optimus surrendered the Policies, it would be entitled to a distribution of the Policies' account values *minus* any outstanding policy loan and accrued loan interest.

37. Optimus surrendered its Policies on January 6, 2023, and on that date the Policy Loans totaled $754,091.62.

38. The Policies' terms required Optimus to repay the $754,091.62 Policy Loan upon surrender of the Policies.

39. In response to its surrender request, due to a computer system error, Optimus received a $1,569,217.99 check from Equitable that represented the Policies' account value *without subtracting* the Policy Loans and accrued interest.

6

40. Equitable notified Optimus of the mistake and requested that Optimus return the Overpayment, but Optimus has failed and refused to repay sums justly due and owed as collateral for the Policy Loans.

41. Optimus's refusal to repay the Policy Loan amounts received in error are in breach of the Policies as the Policies' terms require repayment of the Loan amounts when surrendering. *See, e.g.*, Asonye Policy at 11, Exhibit A (provision on Net Cash Surrender Value).

42. As a result of Optimus's breach, Equitable has suffered damages in the amount not less than $754,091.62 and will continue to suffer such damages if Optimus fails to pay Equitable the mistakenly received Policy Loan amounts along with accrued interest.

43. Equitable is entitled to judgment against Optimus for all losses set forth herein, together with pre-judgment interest and such other relief as the Court may deem proper.

## COUNT II – UNJUST ENRICHMENT

44. In the alternative, even if there is no enforceable contractual obligation on the part of Optimus to pay money damages to Equitable, Equitable is entitled to recover money from Optimus under the equitable doctrine of unjust enrichment.

45. Due to a computer system error, Equitable issued an erroneous check to Optimus on January 9, 2023, for $1,569,217.99. The proper amount of the check was $815,126.37. Therefore, Optimus received an overpayment in the amount of $754,091.62.

46. Optimus cashed the $1,569,217.99 check on or around January 18, 2023.

47. Equitable has conferred benefits on Optimus in the amount of $754,091.62.

7

48. Optimus has appreciated the benefits conferred upon it by retaining the funds erroneously issued and refusing to repay the same. In return, Optimus has not provided Equitable with anything of significant value. Optimus has thereby been unjustly enriched.

49. It is inequitable for Optimus to retain the benefits conferred by Equitable.

50. Optimus's retention of the $754,091.62 overpayment violates the fundamental principles of justice, equity, and good conscious.

51. As a result, Optimus is liable to Equitable for the mistakenly received overpayment in the amount of $754,091.62, together with pre-judgment interest and such other relief as the Court may deem proper.

## COUNT III – CONVERSION

52. Equitable repeats and realleges each and every allegation in the above paragraphs as if fully restated herein.

53. Per the Policies' terms, Equitable is entitled to retain the value of any outstanding policy loan upon an owner's surrender of a policy.

54. Upon Optimus's surrender, the Policy Loans totaled $754,091.62.

55. Equitable mistakenly issued a check to Optimus for $1,569,217.99 *without* subtracting the Policy Loan value of $754,091.62.

56. Equitable has a right to immediate possession of the $754,091.62.

57. Per Equitable's records, Optimus cashed the $1,569,217.99 check on or about January 18, 2023.

58. Equitable has made four separate demands for Optimus to return the Overpayment in the amount of $754,091.62 and provided instructions for how to return the funds.

8

59. In two written communications, Optimus refused to return the Overpayment and has assumed and maintained control, dominion, and ownership of the funds.

60. Equitable is entitled to judgment against Optimus for the actual damages resulting from Optimus's wrongful conversion of the Overpayment, which represents the Policy Loan amounts that belongs to Equitable pursuant to the terms of the governing contract.

WHEREFORE, Plaintiff Equitable prays judgment be entered against Defendant Optimus in the amount of $754,091.62 plus accrued pre-judgment interest, or in whatever different amount that Equitable is found to be entitled to at the time of final judgment, together with such other further relief the Court may deem just and proper including, but not limited to, punitive damages, attorney's fees and court costs so incurred.

[*signature page attached*]

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Jenny A. Covington*
Jenny A. Covington (Bar No. 6331107)
Nelson Mullins Riley & Scarborough LLP
1600 Utica Avenue South, Suite 600
Minneapolis, MN 55416
Telephone: (612) 464-4500
Facsimile: (612) 255-0739
jenny.covington@nelsonmullins.com

*Attorney for Plaintiff Equitable Financial Life Insurance Company*

November 8, 2023