UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EQUITABLE FINANCIAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>OPTIMUS HOSPITALISTS & PEDIATRIC SUBSPECIALISTS, LTD.,<br><br>Defendant. | No. 23 CV 15748<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Equitable Financial Life Insurance Company issued life insurance policies to defendant Optimus Hospitalists & Pediatric Subspecialists beginning in 2010. The policies permitted Optimus to take a loan on the policies, and calculated a net policy value by deducting the loan principal and outstanding interest from the policies' cash surrender value. Between 2016 and 2022, Optimus requested—and Equitable Financial issued—several loans. In 2023, Optimus elected to surrender the policies. Plaintiff issued a check using the cash surrender value, without first deducting the value of the loans. Discovering its error, plaintiff asked Optimus to return the overpayment. After several failed attempts to recover the overpayment, plaintiff filed the instant suit alleging breach of contract (or, in the alternative, unjust enrichment) and conversion. Plaintiff now moves for summary judgment. For the reasons discussed below, the motion is granted.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether summary judgment should be granted, I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Local Rule 56.1 and Evidentiary Issues

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*. 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a supporting memorandum of law and statement of facts demonstrating that it is entitled to judgment as a matter of law. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a). The non-moving party must file a response to that statement and may provide a separate statement of additional facts. N.D. Ill. Local R. 56.1(b)(2)–(3).

Defendant objects to several of plaintiff's facts in its Rule 56.1 statement for being conclusory, argumentative, and without proper foundation. [110] ¶¶ 23–36, 44–

45, 49–58.[1] But "no rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). Further, defendant's founder testified that he signed the documents, [110-1] at 68:1–69:3, and defendant stipulated during his deposition to the authenticity of the surrender loan requests, [110-1] at 80:12–22. The signed loan packages offer a sufficient basis, at this stage, to conclude that Optimus made the loan requests. To the extent plaintiff's Rule 56.1 statements are not supported by the cited evidence, I disregard those statements.

## III. Facts

### A. The Loans

Plaintiff Equitable Financial is an issuer of life insurance. [110] ¶ 1. Defendant Optimus is a neonatologist physician group in Illinois. [110] ¶ 2. In 2010, Optimus applied for corporate-owned life insurance policies, naming Optimus as the sole owner and beneficiary. [110] ¶ 7. Equitable Financial initially issued thirteen policies, insuring the lives of thirteen employees, and later issued an additional three policies, insuring the lives of three additional employees. [110] ¶¶ 8–13.

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page and line numbers. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [110] and [114], where both the asserted fact and the opposing party's response are set forth in one document. Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The parties dispute may facts, but not all of those disputed facts are material.

Pursuant to the terms of the policies, Optimus could "take a loan" on a policy, with "interest on [the] loan accru[ing] daily at an adjustable loan interest rate." [110] ¶ 17; [105-10] at 21. The policies defined "net policy account value" as "the amount in your Policy Account minus any outstanding policy loan and accrued loan interest." [110] ¶ 18. Optimus could surrender any or all policies "at any time while the insured person is living" for the cash surrender value minus the value of the loans plus interest. [110] ¶¶ 20–21. As explained in the prospectus, "If not repaid, the aggregate amount of the outstanding loan and any accrued loan interest will reduce your cash surrender value and your life insurance benefit that may otherwise be payable." [110] ¶ 22; [105-11] at 32.

From 2016 to 2022, Optimus requested several loans. [110] ¶¶ 25–36. In total, Optimus requested (and was issued) a total of $1,275,321.57 in policy loans. [110] ¶ 24. Optimus inquired into options for repayment of the policy loans. [110] ¶ 37.

Plaintiff provided Optimus with an annual report for each policy that reflected the account values, cash surrender values, monthly deductions, and summary of loan activity. [110] ¶¶ 38–39; [110-1] at 85:21–23. Though Optimus disputes that it understood the content of the reports, Dr. Udochukwu Asonye, founder and chief operating officer of Optimus, saw and inspected the annual reports. [110] ¶ 39. The last annual report showed that each policy had a loan balance, with a cumulative total of $751,480.75. [110] ¶ 40. As of August 2022, the policy loan balance totaled $753,244.16 and the net cash surrender value totaled $882,601.29. [110] ¶ 41; [115-1] at 166:14–24, 169:17–23.

In January 2023, Optimus elected to surrender the policies by executing a surrender request for the net cash surrender value. [110] ¶ 43. At that time, the account value totaled $1,569,217.99 and the policy loan balances and accrued loan interest totaled $754,091.62. [110] ¶ 44. Thus, the net cash surrender value (and amount due to be paid to Optimus upon surrender of the policies) was $815,126.37. [110] ¶ 46. Equitable Financial issued a check totaling over $1.5 million, which Optimus cashed shortly after. [110] ¶ 47.

About two months later, an Equitable Financial employee conducted a review of the administrative processing system and discovered that it reflected out-of-balance accounting. [110] ¶ 49. Defendant does not dispute that an accounting was conducted and that the computer system did not subtract the outstanding policy loans before Equitable Financial issued the check. [110] ¶ 49. That same week, plaintiff contacted Optimus regarding the overpayment, but Optimus did not return the funds. [110] ¶ 54. According to Optimus, it was "completely blindsided" when plaintiff asserted that the surrender check was "made in error." [114] ¶ 6. Over the subsequent months, plaintiff sent additional demand letters but Optimus kept the funds and ultimately distributed the funds to its employees. [110] ¶¶ 55–58.

### B. The Litigation

In November 2023, nearly eight months after plaintiff realized its accounting error, Equitable Financial filed the present lawsuit. [1]. After settlement negotiations failed, plaintiff filed an amended complaint in February 2025, alleging claims for

breach of contract, unjust enrichment, and conversion. [58] ¶¶ 40–67.[2] Around that same time, Optimus filed counterclaims against Equitable Financial for negligence, breach of fiduciary duties, fraudulent concealment, respondeat superior, and unjust enrichment/constructive trust, [50-1] ¶¶ 35–61. Optimus also filed a claim for indemnification against third-party defendant Henry Swan, an employee of Equitable Financial, whom Optimus alleged had misrepresented the policies. [50-1] ¶¶ 62–65. In September 2025, the parties filed (and I approved) a joint stipulation of dismissal of defendant's counterclaims against Equitable Financial and its third-party claim against Swan. [84]; [85].

The parties resumed settlement discussions in late 2025, which again failed. Following the close of discovery, Equitable Financial moved for summary judgment on its breach of contract claim or, in the alternative, on its claims for unjust enrichment and conversion. [105-1].

## IV. Analysis

### A. Breach of Contract

"To establish a breach of contract in Illinois, a plaintiff must prove: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022) (citing *Babbitt Muns., Inc. v. Health Care*

[2] The court has subject-matter jurisdiction over this case because plaintiff is a New York corporation with its principal place of business in New York, defendant is an Illinois corporation with its principal place of business in Illinois, and the amount in controversy exceeds $75,000. [58] ¶¶ 1–3. The parties agree that Illinois law applies. [110] ¶ 59.

*Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016)). In opposing summary judgment on Equitable Financial's breach of contract claim, Optimus makes three distinct arguments.

1. *Understanding of the Policies*

First, defendant argues that there are material disputes of fact regarding its understanding of the life insurance policies. [111] at 3–4. Specifically, Optimus challenges plaintiff's "attempts to simplify" the terms of the policies and asserts that they were not actually "straightforward and easily understandable to Optimus." [111] at 3. Because Optimus was confused and had a good-faith basis for retaining the surrender check, defendant believes summary judgment is improper.

But defendant's confusion fails to address the elements of a breach of contract claim. Indeed, neither case cited by defendant involved an analogous claim. For example, *Pape v. Braaten*, 2022 WL 888812 (N.D. Ill. Mar. 25, 2022), involved claims for fraudulent misrepresentation, unjust enrichment, and negligence. Finding that there were disputes of material fact regarding the plaintiff's understanding of the insurance policies, the court denied summary judgment on the negligence and misrepresentation claims. *Pape*, 2022 WL 888812, at *24–29. Similarly, in *Cardinal Transport, Inc. v. Assured Partners of Ohio, LLC*, 628 F.Supp.3d 791 (N.D. Ill. 2022), the plaintiffs brought claims for negligence and intentional misrepresentation. Because whether the defendant misled the plaintiffs in procuring the relevant policy implicated an element of the negligence claim—whether the defendant had breached

a duty it owed to the plaintiff—the court denied summary judgment on that count. *Cardinal Transp.*, 628 F.Supp.3d at 795.

Whether defendant read or whether plaintiff (or its employees) provided adequate and accurate information when the parties entered into the policies may have been relevant to some of defendant's counterclaims. But those questions do not undermine the viability of a breach of contract claim. A party cannot avoid contractual obligations by asserting mere confusion (as opposed to fraud or some other theory that may call into question the validity and enforceability of a contract). *Cf. RS&P/WC Fields Ltd. v. BOSP Invs.*, 829 F.Supp. 928, 969 (N.D. Ill. 1993).

*2. Specific Breach*

Optimus does not dispute plaintiff's calculations. [110] ¶ 46. Defendant instead argues that plaintiff has failed to establish a breach of policy terms. [111] at 5–6. A claim for breach of contract must identify the specific contract term that has been breached. *See, e.g.*, *Navar v. Tribler, Orpett & Meyer, P.C.*, 2015 WL 6163619, at *10 (Ill. App. Ct. 2015). Here, plaintiff points to three provisions in the policies which it argues Optimus breached. [115] at 9. These provisions make clear that (1) Optimus could take a loan on the policies, and (2) if it did, then the cash surrender value would be reduced by the value of any outstanding loans and any accrued loan interest. [105-10] at 20–21.

True, the policies do not contain explicit language governing what to do in a situation where Equitable Financial surrenders the incorrect balance (i.e., account value as opposed to net cash surrender value). But the policies do contain clear

language on how to calculate the correct surrender value (and Equitable Financial produced annual reports calculating as much). Optimus breached its obligation to repay the loan principal and outstanding interest when it was overpaid and refused to refund the excess value.

The facts in this case are not unlike those in *Employers Insurance of Wausau v. Titan International, Inc.*, 400 F.3d 486 (7th Cir. 2005). There, because of a computer error, the insurer (Wausau) overlooked certain losses and mistakenly sent the defendants a check for the wrong amount. After the defendants refused the refund demands, the insurance company sued for breach of contract. *Emps. Ins.*, 400 F.3d at 488. The defendants did not dispute the computational error but instead argued that Wausau failed to prove that the "correct" amount was compliant with the insurance policies. *Id.* at 489. The court sided with the insurer and found that the defendants had misunderstood the burden of proof in a contract case: "If the seller presents a bill to the buyer, the buyer refuses to pay, and the seller sues, the seller's initial burden of production merely requires that it submit the contract and show how the amount that it is seeking is derived from the contract's terms." *Id.* at 489–90.

That is exactly what Equitable Financial did here. It showed how the terms of the policies, in light of the loans Optimus had been issued, required plaintiff to retain $754,091.62 as repayment for the policy loan balance, so that defendant's refusal to comply was a breach. *See id.* at 490.[3]

---

[3] Defendant's attempt to compare this case to *NBase Communications, Inc. v. American National Bank & Trust Co.*, 8 F.Supp.2d 1071 (N.D. Ill. 1998), is unavailing. [111] at 6. In *NBase Communications*, the court found that a genuine issue of material fact over the

### 3. *Affirmative Defenses*

Third, Optimus argues that its affirmative defenses raise factual disputes that preclude summary judgment. [111] at 6–8. "The defendant … bears the burden of proof on any affirmative defense that it chooses to assert." *Bauer v. J.B. Hunt Transp., Inc.*, 150 F.3d 759, 763 (7th Cir. 1998). Here, defendant argues that plaintiff's two-month delay in addressing the overpayment (and nearly ten-month delay in filing the instant lawsuit) constitutes waiver.

Waiver is the "intentional relinquishment or abandonment of a known right." *Moore v. Club Exploria, LLC*, 187 F.4th 970, 978 (7th Cir. 2026) (citation omitted). Parties may waive contractual provisions, but "the actions constituting the waiver must be clear, unequivocal and decisive." *Solai & Cameron, Inc. v. Plainfield Cmty. Consol. Sch. Dist.*, 374 Ill.App.3d 825, 845 (2007) (citations omitted).

Optimus does not dispute that plaintiff's "computer system did not subtract the outstanding Policy Loans prior to the Surrender Check being issued." [110] ¶ 49. The only evidence in the record supports plaintiff's position that the overpayment was a mistake, and not that Equitable Financial intended to abandon the excess money surrendered to Optimus. Further, the two-month window between plaintiff issuing the surrender check and plaintiff discovering its mistake was not unreasonable. *See, e.g.*, *Lumenite Control Tech., Inc, v, Jarvis*, 252 F.Supp.2d 700,

---

discharge for value rule precluded summary judgment. Here, defendant did not raise (nor could it establish) a discharge for value defense, and defendant has not suggested any dispute over the correct calculation of the loan balances and surrender values under the policies' terms.

707 (N.D. Ill. 2003) (finding that a nine-month delay between a mistaken payment being issued and a repayment demand being made was not unreasonable). Nor did plaintiff waive its right to repayment by waiting nearly ten months to file the instant lawsuit where plaintiff made several demands to Optimus in an attempt to resolve the issue short of litigation. [110] ¶¶ 53–57.

Defendant's estoppel argument similarly fails. [111] at 7–8. According to Optimus, it has been prejudiced by its reliance on plaintiff's conduct "because the Surrender Check has been cashed and therefore Plaintiff is estopped from demanding return of money that it paid." [111] at 7. Equitable estoppel requires "(1) a knowing representation, (2) made in writing, (3) with reasonable reliance on that misrepresentation by the plaintiff, (4) to her detriment." *Trustmark Life Ins. v. Univ. of Chi. Hosps.*, 207 F.3d 876, 883 (7th Cir. 2000). Even if there are disputes of material fact over whether Optimus reasonably relied on the overpayment to its detriment, Optimus has failed to show that plaintiff made a knowing representation.[4] To the contrary, defendant acknowledges "that the computer system did not subtract the outstanding Policy Loans prior to the Surrender Check being issued." [110] ¶ 49. There is no evidence in the record contradicting plaintiff's account that the overpayment was a mistake, rather than some intentional, knowing representation of the correct surrender value.

[4] I note, however, that it is unclear how Optimus could have reasonably relied on the overpayment where Optimus had taken out several loans and received annual reports suggesting that the surrender amount would be far less than $1.5 million.

"The law is not finders keepers, unless the property found has been abandoned, which is to say deliberately relinquished." *Emps. Ins.*, 400 F.3d at 491. Optimus's affirmative defenses do not raise disputes of material fact. Summary judgment on plaintiff's breach of contract claim is granted.

**B. Unjust Enrichment**

Plaintiff seeks relief, in the alternative, under a theory of unjust enrichment. [105-1] at 7–9. "The theory of unjust enrichment is an equitable remedy based upon a contract implied in law." *Nesby v. Country Mut. Ins.*, 346 Ill.App.3d 564, 566 (2004). Because it is an equitable remedy, unjust enrichment is available only when there is no adequate remedy at law. *Id.* at 567. Because there are contracts (the corporate-owned life insurance policies) that govern the relationship of the parties, the doctrine of unjust enrichment has no application here. *Id.*

**C. Conversion**

Finally, Equitable Financial argues that Optimus is liable for converting the policy loan balance. [105-1] at 9–10. To state a claim for conversion, "a plaintiff must allege (1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the plaintiff's personal property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally, and (4) the plaintiff's demand for possession of the property." *Wei Quan v. Arcotech Uniexpat, Inc.*, 122 N.E.3d 767, 771 (Ill. App. Ct. 2018). The subject of conversion must be "an identifiable object of property." *In re*

*Thebus*, 108 Ill.2d 255, 260 (1985). Conversion will typically "not lie for money represented by a general debt or obligation." *Id.* at 261.

Optimus relies on *In re Thebus* for the proposition that plaintiff's conversion claim fails as a matter of law because plaintiff seeks to be repaid for a general debt or obligation. [111] at 9 (citing 108 Ill.2d at 260). But Illinois courts reject this approach where the disputed funds represent an identifiable fund. *See Wei Quan*, 122 N.E.3d at 772–73; *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 282 Ill.App.3d 1052, 1059 (1st Dist. 1996). There is no dispute that plaintiff demanded $754,091.62 as an identifiable subset of the surrender value check and that defendant never refunded that amount. *See, e.g.*, [110] ¶ 57; [105-33]. Furthermore, at the time Optimus chose to surrender its policies, the account value was positive; Optimus did not owe a debt to Equitable Financial but rather wrongfully assumed control of the overpayment. *See Fonda v. Gen. Cas. Co. of Ill.*, 279 Ill.App.3d 894, 905 (1st Dist. 1996). Thus, even if plaintiff had not established a breach of contract, recovery would still be proper under its claim for conversion.

## V. Conclusion

Plaintiff's motion for summary judgment, [105], is granted. Summary judgment is granted to plaintiff on its claims for breach of contract and conversion, and the unjust enrichment claim is dismissed. Equitable Financial is awarded

$887,865.41 ($754,091.62 plus $133,773.79 in prejudgment interest).[5] Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: November 9, 2026

[5] "Illinois law permits the recovery of prejudgment interest … if the amount is a fixed amount or easily computed." *Abellan v. Lavelo Prop. Mgmt.*, 948 F.3d 820, 833–34 (7th Cir. 2020) (citation omitted). Interest begins to accrue when the amount becomes "due and capable of exact computation." *Id.* (quoting *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins.*, 611 F.3d 339, 355 (7th Cir. 2010)). Here, the amount is fixed because it is the value of the overpayment. The breach occurred when plaintiff demanded a refund and defendant refused. I therefore calculate prejudgment interest from the date evidencing Optimus's refusal to comply: April 21, 2023. *See* [110] ¶ 56; [105-32]. Defendant does not address the question of prejudgment interest nor challenge plaintiff's assertion that a rate of 5% per annum is appropriate. Applying this rate to the time period between April 21, 2023, and November 6, 2026, the prejudgment interest award is $133,773.79.